UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ARMAND ANDREOZZI,<br><br>　　　　　　　　Petitioner,<br>　　v.<br><br>MANAGER, SEATTLE RESIDENTIAL REENTRY MANAGEMENT,<br><br>　　　　　　　　Respondent. | CASE NO. 2:23-cv-01106-JNW-GJL<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: **March 29, 2024** |

This federal habeas action filed pursuant to 28 U.S.C. § 2241 has been referred to United States Magistrate Judge Grady J. Leupold. Before the Court is the Response to the Petition challenging Petitioner Armand Andreozzi's conviction by military court-martial; therein, Respondent argues the Petition should be dismissed with prejudice. Dkt. 20. Upon review, the undersigned finds the Petition is not barred by the abuse of writ doctrine as argued by Respondent. Nevertheless, because Petitioner was convicted by a court-martial with competent jurisdiction and because each ground raised in the Petition was thoroughly reviewed by United States Military Courts, the undersigned recommends the Petition be **DISMISSED with prejudice**.

REPORT AND RECOMMENDATION- 1

I.     BACKGROUND

**A.     Court-Martial**

The United States Army Court of Criminal Appeals ("ACCA") summarized the conduct underlying Petitioner's military conviction and the arguments presented at trial as follows:

> [Petitioner] was estranged from his wife, Mrs. Andreozzi, when he entered her residence with a garage door opener and a key he had retained after moving out. [Petitioner] waited until she arrived home from work, and then using his 9 mm pistol threatened to kill her. [Petitioner] forced her to engage in sodomy and sexual intercourse with him. When the police arrived at her residence, [Petitioner] fled, taking his pistol with him. [Petitioner] subsequently showed the police where he discarded his pistol.
>
> Based on [Petitioner's] statements to police, trial defense counsel argued a consent defense to the sexual offenses. [Petitioner] claimed that Mrs. Andreozzi consented to the sexual activity because appellant said he would kill himself with the pistol if she did not allow him to engage in sexual activity with her.

*United States v. Andreozzi*, 60 M.J. 727, 728–29 (A. Ct. Crim. App. 2004).

In June 1998, Petitioner, who was an active duty servicemember at the time of his offense, was tried in a military proceeding known as a court-martial. Under applicable law at the time, Petitioner had the right to select whether the composition of his panel consisted of officers alone ("Officer Panel") or whether at least one third of the members be enlisted servicemembers ("Enlisted Panel").[1] At the conclusion of trial:

> [The] general court-martial composed of officer *and enlisted members* convicted [Petitioner], contrary to his pleas, of rape, forcible sodomy, assault consummated

---

[1] At the time of Petitioner's conviction, Article 25(c)(1) of the UCMJ stated that:

> Any enlisted member of an armed force on active duty who is not a member of the same unit as the accused is eligible to serve on general and special courts-martial…, but he shall serve as a member of a court **only if**…**the accused personally has requested orally on the record or in writing that enlisted members serve on it**.

10 U.S.C. § 825(c)(1) (effective through December 31, 2018) (emphasis added). Rule for Court-Martial 903(b)(1) further required that the Petitioner must "personally" request an Enlisted Panel.

REPORT AND RECOMMENDATION- 2

> by battery, burglary, kidnapping, and solicitation of another to assist in escape from pretrial confinement…. The court members sentenced [Petitioner] to a dishonorable discharge, confinement for twenty-seven years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the adjudged sentence except forfeiture of all pay and allowances, waived automatic forfeitures for six months and directed payment of such monies to [Petitioner's] spouse… and credited [Petitioner] with 153 days of confinement for pretrial confinement served.

*Andreozzi*, 60 M.J. at 728 (emphasis added).

### B. Direct Appeal

In December 1999, Petitioner appealed his court-martial conviction. Dkt. 20-1, Ex. 2. Relevant here is his argument that the trial court lacked jurisdiction because he was not convicted by a court-martial panel of his choice as required by the Uniform Code of Military Justice ("UCMJ"). *Id.* at 12–15. Through a process known as a *DuBay* hearing, the ACCA directed a United States Military Judge to hold an evidentiary hearing to determine whether Petitioner personally requested a court-martial panel with enlisted members—a request of this sort is referred to as an election, a forum decision, or a choice of forum. Dkt. 20-1, Ex. 3. Curiously, the Petitioner had been tried by an Enlisted Panel even though the record of trial did not include any reference to the Petitioner personally making this election, either orally or in writing.

During the first *DuBay* hearing, the Military Judge reviewed the trial record and heard testimony from Petitioner and defense counsel. Dkt. 20-1, Ex. 4. Based on the evidence presented, the Military Judge made the following factual determinations:

- Before trial, Petitioner was "thoroughly and accurately advised" of his forum choices and requested to defer his election;

- Defense counsel was confident that they discussed the forum decision with Petitioner ahead of trial and, based on their ordinary practice, they would have

REPORT AND RECOMMENDATION- 3

       recommended electing a panel with enlisted members. However, they could not recall if Petitioner made a formal forum election; and

- Despite the obvious composition of the court-martial panel at trial, neither Petitioner nor his defense counsel objected to inclusion of enlisted members on the panel.

*Id.* at ¶¶ 5, 9–10, 13–18. However, because there was nothing in the trial record documenting Petitioner's oral or written personal request for an Enlisted Panel, the Military Judge concluded there was insufficient evidence to show substantial compliance with Article 25(c)(1). *Id.* at 6–7, 27–28.

      Upon review of the findings from the first *DuBay* hearing and supplemental briefing submitted by the parties, the ACCA determined that the fact finding was incomplete. More specifically, the ACCA concluded that the Military Judge did not sufficiently examine whether there was anything beyond the trial record, including information in the possession of defense counsel or the court-martial trial judge, that indicated whether Petitioner personally requested an Enlisted Panel. Dkt. 20-1, Ex. 5. Therefore, the ACCA ordered a second *DuBay* hearing and directed the Military Judge to conduct further fact finding beyond the trial court record. *Id.*

      Looking beyond the trial record, the Military Judge discovered a document titled "Notice of Pleas and Forum" that was dated before the court-martial, signed by defense counsel, and stated: "[Petitioner] requests to be tried by a panel consisting of at least one third enlisted soldiers." Dkt. 20-1, Ex. 6. Based on this evidence, the Military Judge determined that Petitioner elected to be tried by a panel with enlisted members and that defense counsel had communicated his choice of forum to both the government and the presiding court-martial trial judge. Dkt. 20-1, Ex. 7, at 80–81.

REPORT AND RECOMMENDATION- 4

The ACCA adopted the Military Judge's factual determinations from the second *DuBay* hearing and concluded that the court-martial had jurisdiction because the trial court substantially complied with Article 25(c)(1):

> We are satisfied that although [Petitioner] neither signed the written request for enlisted members nor personally articulated his request orally on the record, [Petitioner] did, in fact, personally elect to be tried by an enlisted panel. As our superior court decided in [*United States v. Townes*, 52 M.J. 275, 277 (C.A.A.F. 2000)], we hold that because there was substantial compliance with Article 25, UCMJ, the failure to comply with the procedural requirements of Article 25, UCMJ, did not materially prejudice [Petitioner's] substantial rights.

*Andreozzi*, 60 M.J. at 732–33.[2]

**C.    Discretionary Review**

Petitioner sought discretionary review of the ACCA's decision from the Court of Appeals for the Armed Forces ("CAAF"). Dkt. 20-1, Ex. 9. Of relevance here, Petitioner argued (1) the ACCA departed from the accepted and usual course of judicial proceedings when it ordered the second *DuBay* hearing and (2) the court-martial lacked jurisdiction because the trial record contained no written or oral request for an Enlisted Panel by Petitioner. *Id.* On October 5, 2005, the CAAF considered and denied the petition for discretionary review. Dkt. 20-1, Ex. 10; *see Daily J.*, 62 M.J. 309 (C.A.A.F. Oct. 4, 2005).

---

[2] Notably, one member of the appellate panel filed a dissenting opinion. The dissenting judge believed the second *DuBay* hearing was ordered in error and concluded that, without the benefit of the evidence uncovered in the second hearing, the record on appeal lacked sufficient evidence of the trial court's substantial compliance with Article 25(c)(1). *Andreozzi*, at 743–44 (Barto, J., dissenting in part).

REPORT AND RECOMMENDATION- 5

D.     **Prior § 2241 Petitions**

Since his conviction was affirmed in 2005, Petitioner has filed five habeas petitions challenging the constitutionality of his confinement.[3] The following is a summary of each prior petition and its disposition:

1. *Andreozzi v. United States*, No. 2015001, (Army Ct. Crim. App. filed Jan. 7, 2015), challenging an action taken by a disciplinary board while Petitioner was confined at the U.S. Disciplinary Barracks in 2003. Dkt. 20-1, Ex. 11.
   **Disposition:** Dismissed for lack of jurisdiction by the CAAF in March 2015. *See Daily J.*, 74 M.J. --- (C.A.A.F. March 23, 2015).

2. *Andreozzi v. Meeks*, No. 1:15-cv-00011-SPB (W.D. Pa. filed Jan. 12, 2015), challenging a parole hearing with the U.S. Parole Commission based on allegedly deficient prehearing disclosure and impermissible victim testimony.
   **Disposition:** Denied on the merits on September 19, 2017. *Id.* at dkt. 23.

3. *Andreozzi v. United States Parole Commission*, No. 2:16-cv-00669-DGC (D. Ariz. filed Mar. 9, 2016), challenging the U.S. Parole Commission's use of videoconferencing to conduct parole determination hearings.
   **Disposition:** Denied without prejudice for failure to exhaust administrative remedies on February 3, 2017. *Id.* at dkt. 30.

4. *Andreozzi v. Sproul*, No. 3:22-cv-1322-NJR (S.D. Ill. filed June 16, 2022), challenging an action taken by a disciplinary board while Petitioner was confined at the U.S. Disciplinary Barracks in 2003.
   **Disposition:** Pending final disposition.

5. *Andreozzi v. Warden*, No. 3:22-cv-02466-DWD (S.D. Ill. filed October 24, 2022), challenging the U.S. Parole Commission's 2013 decision to rescind his presumptive parole date as well as 2022 hearing related to his parole eligibility.
   **Disposition:** Voluntarily dismissed on April 4, 2023. *Id.* at dkt. 17.

---

[3] Petitioner filed a sixth federal habeas petition with the District of Arizona; however, because Petitioner was challenging the conditions of his confinement rather than the confinement itself, the court converted the purported habeas petition to a civil rights action brought under 42 U.S.C. § 1983. *See Andreozzi v. Tracy,* No. CV-16-00562-DGC, 2016 WL 5687337 (D. Ariz. Oct. 3, 2016).

REPORT AND RECOMMENDATION- 6

**E.        Instant § 2241 Petition**

On July 21, 2023, Petitioner filed the instant habeas Petition pursuant to 28 U.S.C. § 2241. The Petition (Dkt. 1) and Brief in Support (Dkt. 4) are repetitive and, at times, difficult to follow. Upon review, the Court can discern three grounds for relief ostensibly raised by Petitioner, each of which relate to his choice of forum and mirror, in part, the claims supporting his previously unsuccessful request for discretionary review before the CAAF.

First, Petitioner argues that the court-martial lacked jurisdiction and violated his substantive rights because there was no oral or written forum election in the trial record. Dkt. 4, at 21–23. Second, Petitioner argues that the ACCA departed from the usual course of judicial proceedings and placed him in "double jeopardy" by ordering a second *DuBay* hearing regarding his choice of forum. *Id.* at 13–17. And third, Petitioner argues the CAAF failed to give him "full and fair consideration" when it denied his request for discretionary review of the ACCA's decision. *See generally* Dkt. 4.

On January 26, 2024, Respondent filed an Answer to the Petition. Dkt. 20. Therein, Respondent argues the Court should not address Petitioner's arguments on the merits because his Petition is barred by the abuse of writ doctrine. *Id.* at 8–11. Should the Court proceed to the merits, Respondent argues that the Petition must still be denied because each ground raised therein received full and fair consideration by military courts with competent jurisdiction. *Id.* at 11–17. Although the Court twice granted Petitioner extensions of time to file a reply in support of his Petition (Dkts. 23, 26), the second reply deadline has elapsed with nothing filed by Petitioner. [4] As such, the Petition is ripe for consideration and any reply received after the issuance of this Report and Recommendation should be disregarded as untimely.

---

[4] Petitioner is currently housed at Pioneer Fellowship House, so he is not entitled to the prison mailbox rule under which court filings are "considered filed at the moment of delivery to prison authorities for forwarding [to the

REPORT AND RECOMMENDATION- 7

Upon review, the instant Petition it is not a successive petition subject to the abuse of writ doctrine even though it is second in time to numerous other habeas petitions. Nevertheless, the Court agrees with Respondent's second argument that Petitioner received full and fair consideration by military courts with competent jurisdiction and, therefore, recommends his Petition be **DISMISSED with prejudice**.

## II.    DISCUSSION

In *Burns v. Wilson*, 346 U.S. 137, 139 (1953), it was established that military prisoners may seek habeas review of their court-martial convictions in federal district courts pursuant to 28 U.S.C. § 2241. Nevertheless, review of court-martial convictions by civilian courts is more limited than that of state and federal convictions. *Lips v. Commandant, Disciplinary Barracks*, 997 F.2d 808, 810 (10th Cir. 1993);[5] *see also Davis v. Marsh*, 876 F.2d 1446, 1447 (9th Cir. 1989) (federal courts have a limited role in reviewing military courts-martial). This constrained scope of habeas review stems from the existence of a comprehensive and independent criminal justice system within the military, as delineated by the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 801–940, and the Manual for Courts-Martial.

The military justice system captures all necessary judicial processes, including trial by court-martial, two layers of appellate review, and the potential for United States Supreme Court review via writ of certiorari. *See Lips*, 997 F.2d at 810; *see also Burns*, 346 U.S. at 140

---

district court]." *Houston v. Lack*, 487 U.S. 266, 268 (1988); *see also Washington v. Santa Rita Cnty. Jail*, No. 18-CV-03420-LHK, 2019 WL 11583475, at *1 (N.D. Cal. Aug. 7, 2019) (*pro se* plaintiff housed at a halfway house is "no longer an 'inmate confined in an institution,' and so 'is not entitled to the benefit of the prison mailbox rule.'") (quoting *McCloskey v. Borders*, No. 18-55179, 2018 WL 2221884, at *1 (9th Cir. Apr. 20, 2018)).

[5] Persuasive authority from the Tenth Circuit Court of Appeals is particularly cogent in this area, given the presence of the military prison in Fort Leavenworth, Kansas within its jurisdiction. *See Brown v. United States*, Case No. 19-cv-8507 MRW, 2021 U.S. Dist. LEXIS 122631, at *5 n.8 (C.D. Cal. June 29, 2021) ("[F]ederal courts regularly cite to decisions from the Tenth Circuit, a court with considerable expertise in analyzing these types of cases.").

REPORT AND RECOMMENDATION- 8

("Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights."); *Parker v. Levy*, 417 U.S. 733, 743 (1974) ("[T]he military constitutes a specialized community governed by a separate discipline from that of the civilian.").

Given the independence of the military courts, habeas review is limited to assessing (1) a military court's jurisdiction over the accused and (2) the constitutionality of the military court's actions. *Broussard v. Patton*, 466 F.2d 816, 818 (9th Cir. 1972) (citations omitted); *see Lips*, 997 F.2d at 811. In performing this limited function, a federal district court must not "re-examine and reweigh each item of evidence" or otherwise "repeat" the process that played out in military courts of appeals. *Burns,* 346 U.S. at 144–45; *Gurry v. Butera-Ortiz*, No. C 11-00964 RS, 2012 WL 3276983, at *3 (N.D. Cal. Aug. 9, 2012).

Thus, absent a jurisdictional flaw, a district court's review of a military conviction will generally begin and end with an examination of whether the military justice system thoroughly considered the petitioner's claims. A more searching review is warranted only if the military courts refused to address an issue properly raised. In other words, a district court must first ask whether each ground raised in a § 2241 petition received full and fair consideration in military courts. If a petitioner did not receive full and fair consideration, only then will the district court review the military court's decision *de novo*. *Broussard*, 466 F.2d at 818. Otherwise, the district court must deny the petition, leaving the decision rendered in military court undisturbed. *Id.*; *see also Gibbs v. Thomas*, 466 F. App'x 646 (9th Cir. 2012) (affirming district court's denial of § 2241 habeas petition because each claim raised received full and fair consideration in military courts).

A necessary corollary to the full-and-fair-consideration requirement is that any claim brought in a federal habeas petition must first be presented to the military justice system. Stated differently, "[m]ilitary prisoners must exhaust military remedies before seeking relief in federal court." *Davis*, 876 F.2d at 1449. Any claim not exhausted in the military justice system is waived unless the petitioner can show cause and prejudice for his failure to exhaust. *Davis*, 876 F.2d 1448–49; *Narula v. Yakabisin*, 650 F. App'x 337 (9th Cir. 2016) (affirming dismissal for failure to exhaust military remedies); *Tillery v. Shartie*, 778 F. App'x 426, 428 (9th Cir. 2019) (same).

**A.     The Petition is Not Barred by the Abuse of Writ Doctrine**

Respondent first argues that the Petition is a "successive petition" barred by the equitable abuse of writ doctrine. The Court disagrees. Unlike those who wish to file successive § 2254 petitions, military prisoners are not required to seek leave from federal courts of appeals before filing successive § 2241 petitions. *Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000) (explaining that § 2244(b) does not apply to § 2241 petitions). Although this procedural barrier does not apply to § 2241 petitions, the filing of successive petitions is nonetheless limited by the abuse of writ doctrine. *See Torres-Hurtado v. Zuniga*, 707 F. App'x 913 (9th Cir. 2017).

"The doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (quotations and citations omitted); *see also McCleskey v. Zant*, 499 U.S. 467, 489 (1991) ("[A] petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice."). Under the abuse of writ doctrine, claims brought in a "successive petition" are barred "unless the petitioner can show (1) cause for bringing a

successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." *Alaimalo*, 645 F.3d at 1049.

To be a "successive petition," a § 2241 petition must be more than filed "second or successively in time" to another petition. *Banister v. Davis*, 140 S. Ct. 1698, 1705 (2020) (citing *Magwood v. Patterson*, 561 U.S. 320, 332 (2010)). To be successive, a petition must challenge the same criminal judgment addressed by an earlier petition and the earlier petition must have been dismissed for a non-technical or procedural reason. *Barapind v. Reno*, 225 F.3d 1100, 1112 (9th Cir. 2000); *see also Threats v. Howard*, No. CV-21-00333-TUC-JAS(BGM), 2023 WL 8112601 (D. Ariz. Mar. 24, 2023) (holding that a second-in-time petition was a successive petition barred by abuse of writ doctrine where prior petition challenged same conviction on different grounds).

Here, Respondent argues that the instant Petition is barred by the abuse of writ doctrine because Petitioner could have raised each ground for relief in any of his five prior petitions. It is true that Petitioner has been aware of each ground raised in his petition since his conviction was affirmed in 2005 and, since then, he has filed a least five habeas petitions. But none of his prior petitions challenged his court-martial conviction; instead, most of his prior petitions challenged decisions by the United States Parole Commission. Because the instant Petition is the first to challenge Petitioner's 1999 court-martial conviction, it is not a successive petition barred by the abuse of writ doctrine.

Therefore, Respondent's first argument fails, and the Court must examine the Petition on the merits.[6]

---

[6] Although the Petition is not barred under the abuse of writ doctrine, the Court notes that application of the equitable doctrine of laches may have been appropriate in this case. *See Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994) (applying laches to a petition for writ of error coram nobis and explaining that the doctrine "bars a claim if unreasonable delay causes prejudice to the defendant."). Petitioner has been aware of the grounds raised in

REPORT AND RECOMMENDATION- 11

**B.    There is No Jurisdictional Defect in Petitioner's Court-Martial Conviction**

In Ground One, Petitioner argues that the failure to capture his forum election in the trial court record is a jurisdictional defect in his court-martial conviction. The Court does not agree.

It is true that noncompliance with an accused's forum election causing substantial prejudice is a jurisdictional defect in court-martial proceedings. *See, e.g., United States v. Turner*, 47 M.J. 348 (C.A.A.F. 1997). But failure to honor an accused's forum election is not the same as failure to comply with the procedural requirements for recording such an election. *Id.*; *United States v. Alexander*, 61 M.J. 266, 270 (C.A.A.F. 2005) ("The right being addressed and protected in Article 25 is the right of an accused servicemember to select the forum by which he or she will be tried. The underlying right is one of forum selection, not the ministerial nature of its recording.").

As the ACCA correctly explained:

> Failure to obtain [Petitioner's] forum request on the record, however, **was not jurisdictional** because the *DuBay* hearing established that appellant requested an enlisted forum through counsel…We believe that the logical and compelling conclusion flowing from *Turner* and other cases cited herein is that failures to comply with the strict terms of Article 16 [or 25], UCMJ, are no longer considered errors of jurisdictional moment. Instead, they represent procedural non-compliance with statutory provisions, and must be tested for prejudice.

*Andreozzi*, 60 M.J. at 733 (internal citations and quotations omitted) (emphasis added). Significantly, this aspect of the appellate decision was unanimous. *See id.* at 743–44 (Barto, J., dissenting only as to the second *DuBay* hearing).

---

his Petition since he appealed his conviction. Despite this, he delayed seeking federal habeas relief for nearly twenty years. In such circumstances, prejudice to the government may be presumed and the delayed petition barred by laches. *See Johnson v. United States*, 49 M.J. 569, 574 (N-M. Ct. Crim. App. 1998) (presuming prejudice to the government because, after 29 years, the individuals involved in the court-martial may be difficult to locate and "their memories…would undoubtedly have faded.").

REPORT AND RECOMMENDATION- 12

Given the weight of authority cited in the ACCA's decision, it is unsurprising that the procedural-rather-than-jurisdictional approach has been consistently affirmed in cases following that decision. *Alexander*, 61 M.J. at 269–70; *United States v. Goodwin*, 60 M.J. 849, 850 (N. M. Ct. Crim. App. 2005); *United States v. Bisson*, No. NMCCA 200600997, 2007 WL 2005077, at *5 (N-M. Ct. Crim. App. July 9, 2007); *United States v. Walker*, No. NMCCA 201400136, 2015 WL 602866, at *3 (N-M. Ct. Crim. App. Feb. 12, 2015); *United States v. Marrero-Alvarez*, No. NMCCA 201600011, 2016 WL 1670182, at *1 (N-M. Ct. Crim. App. Apr. 26, 2016); *see also Wright v. Commandant, USDB*, 100 F. App'x 709, 712 (10th Cir. 2004) (finding no jurisdictional defect where habeas record demonstrated military convict informally requested court-martial via an Enlisted Panel).

In short, it is well-established that, absent a showing of substantial prejudice, failure to record a forum election as required by Article 25(c)(1) is not a jurisdictional error.

Petitioner argues that the trial court's failure to record his forum election was a jurisdictional defect necessitating relief from his court-martial conviction. However, apart from the conclusory statement that failure to record his election was a "fundamental and substantial statutory violation, which denied [him] his right to due process," Petitioner does not explain how failure to comply with the procedural requirement set out in Article 25(c)(1) caused him substantial prejudice. Dkt. 4, at 22.

Rather, most of his Petition is devoted to his disagreement with the ACCA's decision to order a second *DuBay* hearing. *See generally* Dkt. 4. But, as will be discussed in greater detail below, Petitioner's disagreement with this decision received full and fair consideration in military courts. As such, it is no reason to disregard the military court's factual determination that, consistent with his attorney's advice, Petitioner requested a court-martial panel with at least

one-third enlisted members. *See Burns,* 346 U.S. at 144–45 (explaining that habeas courts must not reweigh evidence relied upon by military courts); *see also Wright*, 100 F. App'x at 711 (same).

Although the trial court undoubtedly erred in failing to note his choice of forum on the record, Petitioner's election was honored and he suffered no prejudice. Accordingly, the Court finds that the Enlisted Panel court-martial had jurisdiction to convict Petitioner.

**C.      Each Ground for Relief Raised in the Petition was Thoroughly Reviewed in the Military Justice System**

Having found that the court-martial acted within its jurisdiction, the Court now considers whether each ground raised in the Petition received full and fair consideration by military courts.

1.      <u>Ground Three is not an independent ground for habeas relief</u>.

At the outset, Ground Three is not a true ground for relief, but rather an argument for why Petitioner believes his claims were not thoroughly reviewed by military courts. Petitioner argues repeatedly that he did not receive full and fair consideration because the CAAF declined his request for discretionary review. *See* Dkt. 4. However, it is well established that a military prisoner may receive full and fair consideration even where the CAAF denies a petition for discretionary review. *See Nixon v. Ledwith*, 635 F. App'x 560, 567 (10th Cir. 2016) ("[Federal courts] do not require military courts to issue a detailed opinion to conclude that they fully and fairly reviewed a claim.").

On this point, *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986) is instructive. In that case, the habeas petitioner argued he did not receive full and fair consideration in military courts because the military appeals courts denied his request for an evidentiary hearing on the issue of ineffective assistance of counsel. *Id.* at 143–144. At the first level of military appellate review, the *Watson* petitioner was given the opportunity to submit affidavits and present oral

REPORT AND RECOMMENDATION- 14

argument on his ineffective assistance of counsel claim. *Id.* at 145. His evidence and arguments were fully considered and discussed by the intermediate appellate court. *Id.* Although petitioner's request for discretionary review by the higher court was summarily denied, the Tenth Circuit concluded he nonetheless received full and fair consideration of his claim. *Id.* The Circuit Court further explained that "when an issue is briefed and argued before a military board of review, . . . the military tribunal has given the claim fair consideration, even though its opinion summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion." *Id.* at 145.

Here, Petitioner—who had not one, but two, evidentiary hearings—arguably received more consideration than the *Watson* petitioner. As will be discussed in greater detail below, Petitioner briefed each of his claims to the ACCA and the CAAF. *See* Dkt. 20-1, Exs. 2, 8, 9. The ACCA addressed Petitioner's arguments and evidence in its decision, *Andreozzi*, 60 M.J. at 728–33; *id.* at 743–44 (Barto, J., dissenting), and the CAAF denied discretionary review "on consideration" of his petition for review (Dkt. 20-1, Ex. 10). No more was required for Petitioner to receive full and fair consideration by military courts.

Petitioner seeks a different result, arguing that the CAAF was required to address his claims on the merits. Dkt. 4, at 11–17. But this argument ignores that a merits review by the CAAF is a matter of discretion and is granted only upon "good cause shown." 10 U.S.C. § 867(a)(3); *see also Sanford v. United States*, 586 F.3d 28, 30 (D.C. Cir. 2009). Even upon a showing of good cause, however, the decision to grant review remains discretionary.

As such, Petitioner was not entitled to further review by the CAAF and Ground Three is unavailing.

REPORT AND RECOMMENDATION- 15

2. <u>Grounds One and Two received full and fair consideration by military courts</u>.

As for Grounds One and Two, both grounds for relief were presented to and thoroughly reviewed by military courts.

In Ground One, Petitioner argues the trial court's failure to record his forum election violated his substantive rights. This same argument was included in Petitioner's initial brief to the ACCA (Dkt. 20-1, Ex. 2), in his supplemental briefing to the ACCA (Dkt. 20-1, Ex. 8), and in his petition for discretionary review to the CAAF (Dkt. 20-1, Ex. 9). Moreover, fully developing the record on this issue was the purpose of both *DuBay* hearings—after which the ACCA devoted the first several pages of its decision to fully analyzing and discussing the parties' arguments and evidence on the forum election issue. *Andreozzi*, 60 M.J. at 728–33. As for the CAAF, it made clear that it considered Petitioner's arguments before denying his petition for review. *See* Dkt. 20-1, Ex. 10. For these reasons, the Court is satisfied that Petitioner received full and fair consideration of Ground One by military courts.

Looking next to Ground Two, Petitioner argues that the ACCA exceeded its authority in ordering a second *DuBay* hearing. As with Ground One, Petitioner presented this argument to both military courts of appeals. In supplemental briefing to the ACCA, Petitioner cited a dissenting opinion criticizing military courts of appeals for "permitting post-trial hearings to reconstruct alleged conversations between counsel and client." Dkt. 20-1, Ex. 8, at 97 (citing *Morgan,* 57 M.J. at 125-126 (J. Effron, dissenting)). This same concern was the animating principle in Judge Barto's dissent, *see Andreozzi*, 60 M.J. at 743–44 (Barto, J., dissenting), demonstrating that Ground Two was thoroughly considered by the ACCA. As for consideration by the CAAF, the first issue presented for discretionary review was Petitioner's argument that the ACCA erred in ordering a second *DuBay* hearing. Dkt. 20-1, Ex. 9, at 111–12. As stated, the

REPORT AND RECOMMENDATION- 16

CAAF denied discretionary review only after it considered that petition. Dkt. 20-1, Ex. 10. Accordingly, Ground Two was fully and fairly considered by both military courts of appeals.

Because Grounds One and Two were thoroughly reviewed in the military justice system, neither ground entitles Petitioner to habeas relief.

3.  <u>Other arguments for relief are undeveloped, unexhausted, and unavailing</u>.

Finally, Petitioner makes passing reference to two constitutional violations: (1) that he was subjected to "double jeopardy" when the ACCA ordered a second *DuBay* hearing (Dkt. 4, at 45) and (2) that defense counsel was constitutionally deficient in failing to object to the Enlisted Panel at trial (*Id.* at 25). These conclusory arguments, which are unadorned by factual discussion or legal analysis, are insufficient to state a claim for habeas relief. Moreover, both claims are likely waived because neither was presented to the military courts of appeals. *See* Dkt. 20-1, Exs. 2, 8, 9; *but see Andreozzi*, 60 M.J. at 733 n. 14 (opining that, although it did not occur in the instant case, failure to object to panel that contravenes an accused's forum election could constitute ineffective assistance of counsel).

Even if Petitioner had properly developed his arguments and presented them for review to the military courts, neither has merit.

First, the Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." This clause protects individuals from being prosecuted twice for the same offense, subjected to multiple punishments for the same crime, or being retried after an acquittal or conviction. *See Blockburger v. United States*, 284 U.S. 299 (1932); *United States v. Dixon*, 509 U.S. 688 (1993). It does not protect individuals from being subject to more than one evidentiary hearing. As such, Petitioner's double jeopardy argument is without merit.

Next, to succeed under the *Strickland* standard for ineffective assistance of counsel, a habeas petitioner must show two things. *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that his attorney's performance fell below "prevailing professional norms." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). For this prong of the analysis, there are "[n]o particular set of detailed rules" for courts to determine whether an attorney's representation fell below the minimum standard. *Strickand,* 466 U.S. at 688–89. Rather, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case. . .." *Id.* at 690. If the first prong is met, a petitioner must then show he was prejudiced by his attorney's poor performance. *Kimmelman*, 477 U.S. at 381. This second prong is a high bar to clear. To succeed on the prejudice prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Assuming Petitioner satisfied the first *Strickland* prong, his ineffective assistance claim fails on the second. As the ACCA found, the greater weight of the evidentiary record shows that Petitioner requested an enlisted forum. *Andreozzi*, 60 M.J. at 732–33. Because Petitioner desired an Enlisted Panel, any objection defense counsel could have raised would have been aimed at the failure to record this forum election in accordance with Article 25(c)(1). So, even if counsel was deficient in failing to object to this procedural error, Petitioner suffered no prejudice in being tried by the forum of his choice. Therefore, his passing reference to ineffective assistance of counsel is without merit.

### III.  CONCLUSION

For the reasons outlined above, the Petition is not barred by the abuse of writ doctrine. However, because Petitioner was convicted by a court-martial with competent jurisdiction and

REPORT AND RECOMMENDATION- 18

because each ground raised in the Petition was thoroughly reviewed in the military justice system, undersigned recommends the Petition be **DISMISSED** with prejudice. No certificate of appealability shall issue.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the District Judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 29, 2024,** as noted in the caption.

Dated this 14th day of March, 2024.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION- 19